UNITED STATES SOUTHERN DISTRICT COURT
OF NEW YORK

| | |
|---|---|
| BREATHE LLC and TYLER GLOVER<br>Plaintiffs | ) Civil Action No.<br>) 17-00367-VM<br>) |
| v. | ) AFFIDAVIT OF<br>) SETH M. SHAW |
| WHITE FOX VENTURES, INC. AND<br>SETH SHAW<br>Defendant | )<br>)<br>)<br>) |

My name is Seth M. Shaw ("Mr. Shaw") and I make this Affidavit on my own free will.

1.      I am the former Chief Executive Officer (during the period January 22, 2016 through April 4, 2016) and then later Chief Financial Officer (during the period April 4, 2016 through August 12, 2016) of Breath Ecigs Corp ("Ecigs" or "BVAP") which later enacted a name change to White Fox Ventures Inc. ("White Fox" or "AWAW") and I formally resigned my final officer/director level position with the Company on August 12, 2016 (see Form 8-K dated August 22, 2016).

2.      Ecigs publicly announced, via a press release, its corporate decision to change its name to White Fox Ventures, Inc. ("Fox") on May 27, 2016.  The actual name and symbol effectively changed during July of 2016.

3.      On or about August 2015, during the period when Joshua Kimmel ("Kimmel") was the Chief Executive Officer and controlled Ecigs, Breathe LLC ("Breathe" or "Glover") filed a Petition in the United States District Court, Southern District of New York, Case No.  2015-06403, asserting claims against

Ecigs and others ("Lawsuit 1"). At this point in time, I was in no way involved in this lawsuit nor had any direct knowledge of this lawsuit and or its underlying issues.

4.      On or about August 2015, Ecigs filed a Petition in the United States District Court in Tennessee, Case No. 15cv 00345 asserting claims of trademark infringement against Breathe (the "Lawsuit 2"). At this point in time, I was in no way involved in this lawsuit nor had any direct knowledge of this lawsuit and or its underlying issues.

5.      On or about August 2015, ECigs filed a Petition with the United States Trademark Office, Cancellation No.  92062009, seeking to cancel the registered trademark of Breathe (the "Lawsuit 3"). At this point in time, I was in no way involved in this lawsuit nor had any direct knowledge of this lawsuit and or its underlying issues.

6.      Ecigs incurred legal fees in excess of $150,000.00 associated with Lawsuit 1, 2 & 3.  In actuality, the legal fees were approximately $250,000.00 (between White and Case & J. Horton).

7.      On March 30, 2016, Breathe and Ecigs as well as all the defendants with the exception of Joshua Kimmel (former CEO of Ecigs between February 2015 and January 2016), settled their disputes and the Settlement Agreement is attached to  the Complaint filed in this current litigation.  During this period (March 2016), I was the Chief Executive Officer of Ecigs and directly controlled the Company.  I became Chief Executive Officer of Ecigs on January 22, 2016.

8.      On or about March 25, 2016, I communicated with Breathe and informed them to send all communications directly to me as Attorney Jim Trainor (White and Case) had notified me of his intention to immediately resign as Ecig's litigation counsel. I communicated directly with Breathe and gave them my email and cell phone number. I was the main contact for Ecigs as well as my own person.

9.      Upon my departure from Ecigs/Fox on August 12, 2016, a Form 8-K (Special event public filing) was filed on August 22, 2016 (http://ih.advfn.com/p.php?pid=nmona&article=72260232) executed by Shinsuke Nagano ("Nakano") the Chief Executive Officer of White Fox (appointed on April 4, 2016).   The execution date on that Form 8-K was August 18, 2016.  This Form 8-K included the correct address for White Fox (387 Park Avenue South, 5th floor //  New York, NY 10016) as well as the Issuer's phone number ((646) 952 8847).  The Form 8-K filed on August 22, 2016 is the correct legal way to disclose the departure of an officer/director or any other significant disclosable event.  In addition, all press releases issued by Ecigs/White Fox subsequent to April 4, 2016 (the date that Nakano was appointed as Chief Executive Officer), included contact person information at bottom

"For Japanese Investors:

Mr. Takehiro Abe

Chief Operating Officer

Tel: +81 (0) 3-5544-8214

Email: tabe@whitesoxventures.com"

There was sufficient public information that all parties contact information (i.e. corporate address, corporate telephone, company contact person, contact email, etc. etc.) was easily and

readily available for utilization in communicating. However after August 12, 2016, I was NEVER made aware of any letters or correspondences either mailed to White Fox's New York City address or emailed to White Fox contact info by Breathe/Glover. It should be mentioned though that there were still some direct email correspondences between myself and Breathe/Glover after I resigned my position of Chief Financial Officer of White Fox on August 12, 2016.

10.    After my departure from Ecigs/White Fox, I was never informed by White Fox which individual (if any) would serve as White Fox's representative/contact person concerning the completion of the material terms of the Settlement Agreement with Breathe/Glover. In addition, nobody from White Fox ever communicated with me about any correspondences that White Fox may have received from Breathe/Glover subsequent to August 12, 2016 (either written or email correspondences).

11.    After my departure from Ecigs/White Fox, I continued to personally maintain communications (primarily email based) with Breathe and I received an email ("breach email") notice of a breach of the Settlement Agreement in November 2016 (from Mr. Christopher Brown). This breach email was sent to me personally, as I had not been an officer/director of White Fox for nearly 3 months at that time.

12.    Pursuant to the Settlement Agreement with Breathe, Ecigs/Fox agreed to sale the inventory it had on hand with Metro Tablet and/or Ritway. It was the obligation of Ecigs/Fox to sell the inventory and provide fifty (50) percent of the revenue to Breathe. Breathe had no duties to promote, sell, market or distribute the inventory. Ecigs/Fox was to report the sales

figures to Breathe bi-weekly and was aware of its obligations after my departure. Breathe was to jointly share in the revenue. Breathe had no obligation to jointly share in the selling of Ecigs/Fox's inventory or take any affirmative action. As of August 12, 2016, there were no sales ("$ 0") of any inventory and I have no direct knowledge as of today's date (March 24, 2017) as to whether there have been any inventory sales generated by White Fox management team since my departure on August 12, 2016.

13.     Ecigs/Fox was unable to turn over its domain name to Breathe due to the issues the company was having with Joshua Kimmel. However on March 25, 2016 I addressed this issue with Mr. Tyler Glover an we together consummated an alternative plan in the event that Joshua Kimmel were to continue to ignore the Company's request for the domain name to be handed over to Breathe.


SEE EXHIBIT A   (March 25, 2016   —   Text Message Correspondence between Shaw and Glover   —   Shaw is in Green   —   Glover is in Gray)


14.     The parties did agree to a liquidated damages provision at paragraph 9 of the Settlement Agreement that called for the payment of $150,000.00 to Breathe if the Settlement Agreement was breached. However on March 29, 2016, Mr. Tyler Glover and I agreed in writing (via text message conversation) that I would only be personally liable for a maximum amount of $15,000 (not the $150,000.00 referenced above). I agreed to personally pay $15,000 to Breathe (which comprised part of the $25,000 cash component of the Settlement Agreement). I agreed to personally pay this $15,000 to Breathe because Ecigs did not have enough cash to complete the $25,000 cash payment in its entirety on March 30, 2016 (the execution date of the Settlement

Agreement  —  Ecigs made a $10,000 payment at that time).  I paid this $15,000 to Breathe in

August 2016 (and received confirm of receipt from Breathe) and I signed the Settlement

Agreement on behalf on Ecigs as well as myself, because I specifically agreed to be personally

liable for the above-mentioned $15,000 payment.


SEE EXHIBIT B     (March 29, 2016  Text Message Correspondence between Shaw and Glover

—  Shaw is in Green    —  Glover is in Gray)


I make this statement under the pains and penalty of perjury.


_____Seth M. Shaw_____


X _____*(signature)*_____

Seth Shaw

Dated: March _24_, 2017

# EXHIBIT A



Fri, Mar 25, 1:51 PM

The settlement agreement is good. It's just that Josh kimmel is trying to extort me every day and has been hampering my efforts to complete audit.   I can't depend on him to sign settlement or transfer website.  But we can jointly she him for the website URL.

If you can get me the backend information you should be able to because you paid on the account and everything on the back get all the back and information and I'll have a web guy go in and shut it down so he can't  do anything because it's actually technically part of the company and not Josh Kimball

I'll cooperate with you 10000000%. What you don't know is that Josh kimmel tried to illegally lock us out of the bank account to extort us, as

# EXHIBIT B

••○○○ Verizon   LTE                    12:53 AM                    🖇 73% ▭

‹                                          TG                                    ⓘ

                                         Tyler

Tue, Mar 29, 5:57 PM

A couple small changes are necessary in final settlement. Tauriga sciences inc. cannot be liable for Breathe's settlement.  We would all get in trouble with that. Secondly we need to change wording that Breathe ECig corp. together with LLC will continue to sell Breathe Ecigs inventory for a period of 12 months.  Otherwise we will be deemed a shell as no one will ever have any liquidity whatsoever. And me personally, I will agree to be liable for $15,000.   Not $150,000. I've gone through hell in my life to save this company and I would like to be able to start a family soon.  I cannot have that kind of number hanging over my head.  I've done everything i possibly can for everyone.   Please agree to these three changes.  They are fair and necessary.   Thank you Tyler.  Call of you need to discuss at all.   Kind regards.  Seth



••○○○ Verizon   LTE          12:53 AM          ≯ 73% ▭

TG

Tyler

ever have any liquidity whatsoever. And me personally, I will agree to be liable for $15,000.  Not $150,000. I've gone through hell in my life to save this company and I would like to be able to start a family soon.  I cannot have that kind of number hanging over my head.  I've done everything i possibly can for everyone.   Please agree to these three changes.  They are fair and necessary.   Thank you Tyler. Call of you need to discuss at all.   Kind regards.  Seth

Tue, Mar 29, 7:47 PM

I told chris to fix. He sent over. Cannot read right now. Look over and make sure there good.

Also when can you send over email to Tennessee atty with us on so we can get this wrapped up tomorrow if we can. Want to be done with everything tomorrow so we can move forward. Thanks